UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

LILLIE SINKO                                                                              PLAINTIFF

V.                              NO. 3:17-CV-312-BD

SOCIAL SECURITY ADMINISTRATION                                       DEFENDANT

**ORDER**

I. **Introduction:**

On February 28, 2014, Lillie Sinko applied for disability benefits, alleging disability beginning on April 1, 2011. (Tr. at 26) Ms. Sinko's claims were denied initially and upon reconsideration. *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Ms. Sinko's application. (Tr. at 38-39) Ms. Sinko requested that the Appeals Council review the ALJ's decision, but that request was denied. (Tr. at 1) Therefore, the ALJ's decision stands as the final decision of the Commissioner. Ms. Sinko filed this case seeking judicial review of the decision denying her benefits.[1]

II. **The Commissioner's Decision:**

The ALJ found that Ms. Sinko had not engaged in substantial gainful activity from the amended alleged onset date of April 1, 2011, through her date last insured, March 31, 2015. (Tr. at 28) At step two of the five-step analysis, the ALJ found that Ms. Sinko had

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge.

1

the following severe impairments: disorder of the back, hypertension, and chronic obstructive pulmonary disease. *Id.*

After finding that Ms. Sinko's impairments did not meet or equal a listed impairment (Tr. at 29), the ALJ determined that Ms. Sinko had the residual functional capacity ("RFC") to perform the full range of work at the medium exertional level.[2] (Tr. at 30). There were no non-exertional restrictions included in the RFC finding. *Id.*

Based on this RFC, the ALJ determined that Ms. Sinko was able to perform her past relevant work as a production line solderer and assembler. (Tr. at 37) However, the ALJ made an alternate finding at step five. He relied on the testimony of a Vocational Expert ("VE") to find that, based on her age, education, work experience and RFC, Ms. Sinko could perform other work in the national economy, such as laundry worker and dining room attendant. (Tr. at 38) The ALJ determined, therefore, that Ms. Sinko was not disabled. *Id.*

## III.   Discussion:

   A.   Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means "enough that a reasonable mind would find

---

[2] Medium work is defined as lifting or carrying no more than 50 pounds at a time with frequent lifting and carrying of up to 25 pounds, with a good deal of walking or standing. 20 C.F.R. § 404.1567(c).

it adequate to support he ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In making this determination, the Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

    B.   Ms. Sinko's Arguments on Appeal

In this appeal, Ms. Sinko maintains that the ALJ's decision to deny benefits is not supported by substantial evidence. She argues that the ALJ erred by finding her capable of work at the medium level.

A claimant's RFC represents the most she can do despite the combined effects of all credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining a claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant could perform in a work setting, giving appropriate consideration to all impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

Ms. Sinko asserts that she suffers from disabling high blood pressure. The evidence shows, however, that she was non-compliant in taking her medication and that, when she did take medication, her blood pressure readings improved. (Tr. at 279, 377). A failure to follow a recommended course of treatment weighs against a claimant's

3

credibility. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005). In July 2014, Ms. Sinko reported that she had not taken blood pressure medication for "some time." In January of 2015, her cardiologist noted that Ms. Sinko's blood pressure was well-controlled with medication. (Tr. at 377, 430) Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). Ms. Sinko conceded that medication controlled her high blood pressure condition. (Tr. at 52)

Furthermore, in her brief, Ms. Sinko cites only to her high blood pressure readings, but the record also reflects normal readings during the relevant time-period. (Tr. at 302, 399, 400, 432) A medical consultative examiner, Donita Keown, M.D., stated that, given adequate management of her blood pressure, Ms. Sinko could perform medium work with no assistive devices. (Tr. at 448) The ALJ properly gave Dr. Keown's opinion great weight, because it was consistent with the medical evidence of record, including the opinions of the state-agency medical consultants (finding Ms. Sinko capable of medium work). (Tr. at 36, 71, 81)

As for COPD, Ms. Sinko reported shortness of breath and chest tightness, but her doctor opined that her regular smoking habit was most likely the cause. (Tr. at 442) When Ms. Sinko was hospitalized briefly for heart problems, her doctors treated her with oxygen and a "lifejacket," as well as medication (Coreg). (Tr. at 57) Thereafter, she did not require oxygen or surgery for heart failure, and she suffered no heart attacks. (Tr. at

4

58) A heart catheterization in September 2014 showed no significant coronary artery disease and normal left ventricular function. (Tr. at 432) Normal examination findings are not indicative of disabling pain. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

Ms. Sinko told her doctor in September 2014 that she felt better. (Tr. at 432) In January 2015, tests showed mild-to-moderate diastolic dysfunction, but she was negative for chest pain, palpitation, and syncope. (Tr. at 427-429). Also, Ms. Sinko's ejection fraction improved over time. (Doc. No. 11 at p. 7). Ms. Sinko reported that she was able to perform light chores and housework without shortness of breath. (Tr. at 432); *see Johnson v. Apfel*, 240 F.3d 1145, 1148-49 (8th Cir. 2001) (acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility).

Ms. Sinko also argues that left knee pain and back pain contributed to her problems. However, during the relevant time-period, clinical exams and objective testing showed normal knee function. (Tr. at 443-449). Ms. Sinko submitted records from two years *after* the end of the relevant time-period that suggested knee pain; it was treated conservatively with a steroid injection. (Tr. at 8-11) These records do not evidence error on the ALJ's part.

While a back x-ray in 2013 showed moderate-to-severe degenerative disease, Dr. Keown found no disc herniation, foraminal impingement, or central stenosis. (Tr. at 444-449) By May 2015, Ms. Sinko exhibited no back pain. (Tr. at 373) No doctor ever placed

any restriction on Ms. Sinko related to back pain; and she did not require aggressive treatment. A lack of physician-imposed restrictions may serve as a reason to discredit a claimant's credibility. *Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003).

Ms. Sinko also alleges anxiety, and she says that side effects from medications call for an award of benefits. Ms. Sinko never sought formal psychiatric care from a licensed provider, and she testified that she stopped taking Xanax in 2010. (Tr. at 60-61) When a claimant has not treated her anxiety, the ALJ is justified in ruling out anxiety as an impairment. *Smith v. Shalala*, 987 F.2d 1371, 1374-75 (8th Cir. 1993). Ms. Sinko did not note any side effects on her disability documents, and she only reported dizziness to her doctor in 2015. (Tr. at 225, 233, 372) Allegations alone, without supporting medical evidence, do not mean that a claimant is disabled. 20 C.F.R. §§ 404.1508, 416.908; *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004).

## IV. <u>Conclusion</u>:

There is substantial evidence to support the Commissioner's decision to deny benefits. The RFC fully incorporated all of Ms. Sinko's limitations. The finding that Ms. Sinko was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is affirmed. The case is dismissed, with prejudice.

IT IS SO ORDERED this 26th day of November, 2018.

_____
UNITED STATES MAGISTRATE JUDGE